IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DURRELL WOODS # 0031471, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:24-cv-01385 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| f/n/u VANWINKLE, *Deputy*, *et al*., ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Durrell Woods, a pretrial detainee in the custody of the Rutherford County Adult Detention Center ("RCADC") in Murfreesboro, Tennessee, filed a pro se complaint against f/n/u Vanwinkle and f/n/u Duggin, both RCADC deputies. Plaintiff alleges violations of his civil rights. (Doc. No. 1). Plaintiff also has filed an Application for Leave to Proceed In Forma Pauperis ("IFP Application") (Doc. No. 2) and a supplement to the complaint (Doc. No. 5).

The Court must resolve the filing fee before moving to the required screening of the prisoner complaint.

**I. FILING FEE**

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. No. 2), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 2) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-

plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the RCADC to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund

account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### A. Section 1983 Standard

Plaintiff brings his claims under 42 U.S.C. § 1983, which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured

by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

**B. Facts Alleged in the Complaint**

The allegations of the complaint are assumed true for purposes of the required PLRA screening. Plaintiff filed a supplement to the complaint (Doc. No. 5), which the Court also considers.

The complaint alleges that in March 2024, Defendants failed to protect Plaintiff in that they placed him in the same housing pod as his "charge partner," with whom Plaintiff got into a fight. (Doc. No. 1 at 6). Plaintiff "feel[s] this is grounds for a lawsuit seeing how we should have never been in the same pod due to our conflict of interest." (*Id*. at 6; Doc. No. 5 at 1). Plaintiff alleges that housing him with this individual "shows a lack of care and negligence" on the "facility." (*Id*.) After the fight, Defendants placed Plaintiff in solitary confinement.

The complaint also alleges that the conditions of Plaintiff's thirteen-hour stay in solitary confinement were unconstitutional. According to Plaintiff, fecal matter was spread all over the walls, floors, toilet, and sink. The odor allegedly gave Plaintiff a headache, made him nauseous, and affected his mental health. Allegedly, Plaintiff repeatedly asked for cleaning supplies, and Defendants never brought them. According to Plaintiff, Defendant Duggin laughed at Plaintiff instead. Allegedly, other officers ultimately provided Plaintiff with cleaning supplies, and Plaintiff later was relocated to another cell. For weeks following his time in solitary confinement, Plaintiff allegedly had nightmares about it.

The complaint further alleges that individuals, whom the complaint does not specify, retaliated against Plaintiff after he filed this lawsuit. Allegedly, Plaintiff was: charged with, and found guilty of, unwarranted disciplinary infractions; threatened with pepper tray and having the water turned off to his cell; threatened to be sent into protective custody; and called multiple names. The complaint alleges that Officer Trutter issued the disciplinary charges and Sergeant Ciaro found Plaintiff guilty of all charges.[1]

Plaintiff contends that he should not have to pay his medical bill for seeing the nurse for the headaches and nausea he experienced after having been in solitary confinement.

The complaint also alleges that Plaintiff's "commissary" was stolen "because they wouldn't let [him] pack his own things . . . ." when Plaintiff moved cells. (Doc. No. 1 at 10). The complaint does not identify who "they" are.

The complaint seeks "financial" compensation for Defendants "putting [his] life in danger, and the health hazard that the unsanitary cell caused [him], pain and suffering due to the humiliation [he] had to endure, and the mistreatment and negligent [he] went thru [sic]." (*Id*. at 11; Doc. No. 5 at 7).

**C. Analysis**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement. The complaint names two Defendant deputies in their individual and official capacities. (*See* Doc. No. 1 at 2).

1. Official Capacity Claims

Because "[o]fficial-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent,'" *Kentucky v. Graham*, 473 U.S. 159, 166

---

[1] Neither Officer Trutter nor Sergeant Ciaro are named as Defendants to this action.

(1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)), Plaintiff's official capacity claims against Defendants Vanwinkle and Duggin are thus treated as claims against their employer, Rutherford County.

A local government like Rutherford County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To state a municipal-liability claim under § 1983, the plaintiff must allege the deprivation (1) of a right secured by the Constitution or laws of the United States, (2) that was directly caused by a municipal policy or custom." *Nichols v. Wayne Cty. Mich.*, 822 F. App'x 445, 448 (6th Cir. 2020) (citing *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017)). A plaintiff may prove an unconstitutional "policy" or "custom" by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Here, Plaintiff has not alleged any facts from which the Court could conclude that an official policy or custom of Rutherford County resulted in a violation of his constitutional rights. The complaint does not refer to any official policies or customs. Thus, the complaint fails to state a claim upon which relief can be granted under Section 1983 against Rutherford County. All such claims will be dismissed.

2. <u>Individual Capacity Claims</u>

The Court moves now to Plaintiff's individual capacity claims against Defendants Vanwinkle and Duggin. Many of Plaintiff's allegations concern the conditions of his confinement. The Court will begin with those claims.

a. *Conditions-of-Confinement Claims*

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cty. Sheriff Dep't*, No. 1:10CV672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, which includes "extreme deprivations" that deny "the minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "But the Eighth Amendment does not apply to pretrial detainees like [plaintiff]." *Greene v. Crawford Cty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 382 n.3 (6th Cir. 2004)). State pretrial detainees are instead protected by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV, § 1; *Greene*, 22 F.4th at 605; *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 n.9 (2007).

The Due Process Clause protects detainees from being "punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994). Pretrial detainees can demonstrate they are being "subjected to unconstitutional punishment" by showing a "restriction or condition" of their confinement "is not rationally related to a legitimate government objective or is excessive in relation to that purpose."

*J.H. v. Williamson Cty.*, 951 F.3d 709, 717 (6th Cir. 2020) (quoting *Bell*, 441 U.S. at 538); *Williamson v. Stirling*, 912 F.3d 154, 185 (4th Cir. 2018). To determine whether a condition of confinement is "excessive," courts analyze the "totality of [the] circumstances." *J.H.*, 951 F.3d at 718.

Here, the allegations of the complaint support a nonfrivolous claim that the totality of the circumstances of Plaintiff's conditions of confinement as a pretrial detainee were excessive relative to Defendants' goal of maintaining jail security. The complaint alleges that the walls, ceiling, floor, and toilet in the cell in which Plaintiff was placed as punishment was covered in feces, including the sink. Plaintiff declined to drink water out of his sink because the water tasted like "fecal matter." (Doc. No. 1 at 7). Plaintiff "was forced to where [sic] his thermal over [his] mouth and nose," his "head was pounding from inhaling fecal matter," and he was "crying, throwing up, and left to inhale another person[']s fecal matter like[he] wasn't a human being." (*Id*. at 9). He suffers from nightmares after the experience.

In *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam), the Supreme Court addressed exposure to feces and reversed the lower court's entry of summary judgment. The Court described the conditions as follows:

> Correctional officers confined [the inmate] in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in "'massive amounts' of feces": all over the floor, the ceiling, the window, the walls, and even "'packed inside the water faucet.'" *Taylor v. Stevens*, 946 F. 3d 211, 218 ([5th Cir.] 2019). Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage. *Id*. at 53, 130 S. Ct. 1175 (footnote omitted).

*Id*. at 7-8. The Court held that no reasonable correctional officer could have concluded that it was constitutionally permissible to house the plaintiff under those conditions. *Id*. at 8-9. In doing so, the Court also stated, "The Fifth Circuit identified no evidence that the conditions of Taylor's confinement were compelled by necessity or exigency." *Id*. at 9.

Taylor was a convicted inmate, not a pretrial detainee like Plaintiff. Thus, the constitutional protections afforded to him were less than those afforded to Plaintiff, who (like Taylor) alleges that Defendants placed him in a cell covered in massive amounts of feces. The complaint alleges that Plaintiff suffered physical injuries as a result of that confinement.

The Court finds that the conditions of confinement claims against Defendants Vanwinkle and Duggin in their individual capacities survive the PLRA screening and shall proceed for further development.

### 2. *Failure-to-Protect Claims*

Next, the complaint alleges that Defendants should not have placed Plaintiff in a cell with his charge partner because Defendants knew doing so posed a threat to Plaintiff's safety.

Prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. *Farmer*, 511 U.S. 825, 832-33. Liability attaches to an officer's failure to protect an inmate only where the inmate demonstrates that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with deliberate indifference to the inmate's safety. *Id*. at 834. Historically, detainee and prisoner claims analyzed the deliberate indifference standard "under the same rubric." *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), however, the Supreme Court eliminated the subjective intent element of a detainee's claim of deliberate indifference in the context of excessive force, holding that the relevant inquiry is

whether the force used purposely used was objectively unreasonable. *Id*. at 576 U.S. at 397-98. Considering *Kingsley*, the Sixth Circuit later modified "the subjective prong of the deliberate-indifference test for pretrial detainees" to hold that a pretrial detainee can establish deliberate indifference by proving "more than negligence but less than subjective intent — something akin to reckless disregard." *Brawner v. Scott Cnty.*, 14 F.4th 585, 596-97 (6th Cir. 2021) (citing *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016)).

More recently, the Sixth Circuit took "the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022) (citing *Brawner*, 14 F.4th at 596). Specifically, liability attaches where the defendant officer "[1] act[ed] intentionally in a manner that [2] put[ ] the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[d] the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729).

With these standards in mind, the Court finds that the allegations of the complaint are insufficient to allow the inference that either Defendant demonstrated reckless disregard to "an unjustifiably high risk of harm" to Plaintiff by placing Plaintiff into the same cell as his charge partner. *See Brawner*, 14 F.4th at 596 (quoting *Farmer*, 511 U.S. at 836). While Plaintiff alleges that Defendants knew that charge partners should not be placed in the same cell, Plaintiff has not alleged any facts to indicate that Defendants should have appreciated any particularized risk to Plaintiff by placing him in the same cell as his charge partner. Plaintiff does not provide any facts that would indicate that either Defendant knew or should have known that Plaintiff's charge partner had any ill intent toward Plaintiff prior to this incident or had a history of fighting. In sum,

Plaintiff does not allege any facts from which "a reasonable officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences" of Defendants' conduct. *Westmoreland*, 29 F.4th at 730. *See Morgan by next friend Morgan v. Wayne Cnty., Mich.*, 33 F.4th 320, 327 (6th Cir. 2022) ("[a]n official who was unaware of a substantial risk may not be held liable under the Eighth Amendment."); *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *3 (6th Cir. Mar. 14, 2023) (assuming arguendo that plaintiff was a pretrial detainee, holding that attack "without warning" indicates lack of substantial risk and defendant officers were entitled to qualified immunity on plaintiff's failure to protect claims); *Young v. Phillips*, No. 3:22-CV-295-TAV-JEM, 2022 WL 4360848, at *3 (E.D. Tenn. Sept. 20, 2022) (finding no viable failure to protect claim under Section 1983 where plaintiff failed to allege that defendant "knew or should have known . . . that [assailant] had any ill intent toward [plaintiff]"). Therefore, the Court finds Plaintiff has failed to state viable failure-to-protect claims under Section 1983 against Defendants Vanwinkle and Duggin. Those claims will be dismissed.

3. *Retaliation Claims*

The complaint further alleges that unspecified individuals retaliated against Plaintiff after he filed this lawsuit. He was charged with, and found guilty of, unwarranted disciplinary infractions; threatened with pepper tray and having the water turned off to his cell; threatened to be sent into protective custody; and called multiple names.

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3)

the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. The plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). If the plaintiff establishes "'his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant,' who may prevail on summary judgment by showing that 'he would have taken the same action in the absence of the protected activity.'" *Vaughn v. Underwood*, No. 3:20-CV-P317-RGJ, 2022 WL 4693908, at *2 (W.D. Ky. Sept. 30, 2022) (quoting *Thaddeus-X*, 175 F.3d at 399).

Although the complaint's allegations may implicate concerns for which relief may be available under Section 1983, Plaintiff fails to identity the individuals who retaliated against him and/or failed to name those individuals as defendants to this action. Rather than dismiss the case, however, considering Plaintiff's pro se status, the Court will give Plaintiff a chance to file an amended complaint identifying the individuals who retaliated against him for filing this lawsuit. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

### 4. *Stolen Commissary*

Next, the complaint alleges that Plaintiff's commissary was stolen when Defendants permitted another inmate to pack up Plaintiff's belongings.

The Due Process Clause of the Fourteenth Amendment prohibits public officers from unlawfully taking a person's property. However, the Supreme Court has held that, where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Sixth

Circuit has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985).

The complaint does not allege that Tennessee post-deprivation remedies are inadequate. Neither does it allege that Plaintiff has utilized the state post-deprivation remedies available to him. Thus, his Due Process claims will be dismissed.

### 5. *Medical Bill*

Finally, the complaint alleges that Plaintiff should not be required to pay the medical bill for his treatment of symptoms that arose after he was confined in the feces-covered cell.

"Under the Fourteenth Amendment Due Process Clause, . . . pretrial detainees [like Plaintiff] have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). There is no constitutional requirement, however, that the care be provided to the inmate free of charge. *See Sickles v. Campbell Cnty., Ky.,* 501 F.3d 726, 730 (6th Cir. 2007). Plaintiff does not allege that his care was conditioned on his ability to pay. Thus, Plaintiff does not allege a violation of federal constitutional law. *Id*. Consequently, this claim fails to state a claim under Section 1983 upon which relief can be granted.

### III. CONCLUSION

Having conducted the screening of the complaint required by the PRLA, the Court finds that the conditions-of-confinement claims against Defendants Vanwinkle and Duggin in their individual capacities are colorable under Section 1983. This action shall proceed as to those claims and Defendants.

Plaintiff may file an amended complaint no later than 30 days after entry of this Memorandum Opinion and Order in which he identifies the individuals who retaliated against him

for filing this lawsuit. Any amended complaint must contain all allegations, claims, and defendants, and should not incorporate the original complaint by reference.

If Plaintiff submits a timely amended complaint, the Court will screen the amended complaint pursuant to the PLRA upon receipt. If not, at the expiration of the 30-day period, Plaintiff's conditions of confinement claims against Defendants Vanwinkle and Duggin in their individual capacities will be referred to the Magistrate Judge, and all other claims and Defendants will be dismissed.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

IT IS SO ORDERED.

*Eli Richardson*
ELI J. RICHARDSON
UNITED STATES DISTRICT JUDGE